2010 ME 51

**Gregory R. HANSON**

v.

**S.D. WARREN CO. et al.**

Supreme Judicial Court of Maine.

Argued: April 13, 2010.

Decided: June 8, 2010.

James J. MacAdam, Esq., Nathan A. Jury, Esq., David E. Hirtle, Esq. (orally), MacAdam Law Offices, P.A., Portland, ME, for Gregory Hanson.

Daniel F. Gilligan, Esq. (orally), Troubh Heisler, Portland, ME, for S.D. Warren Company.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Gregory R. Hanson appeals from a decision of a Workers' Compensation Board hearing officer (*Elwin, HO*), granting his petition for award and awarding him partial incapacity benefits subject to an offset for Hanson's pension. Hanson contends that the hearing officer erred by reducing the partial benefit, paid pursuant to 39–A M.R.S. § 213 (2009), to the statutory maximum, pursuant to 39–A M.R.S. § 211 (2009), before coordinating the workers' compensation benefit with his pension, pursuant to 39–A M.R.S. § 221 (2009). Hanson contends that workers' compensation benefits should be reduced to the statutory maximum only after permissible offsets are taken. We affirm.

## I. CASE HISTORY

[¶ 2] Gregory Hanson worked for S.D. Warren for thirty years, most recently as control room operator. In January 2006, he suffered two acute episodes of shortness of breath, and was diagnosed with occupational asthma as a result of exposure to fumes. He was restricted to working in environments where he would not be exposed to gases, dust, or fumes. Al-though he attempted to return to work in April 2006, he was unable to do so. S.D. Warren terminated his employment in February 2008.

[¶ 3] In May 2008, Hanson began receiving pension benefits of $2050 per month. Based on benefit payment elections that Hanson has made, that amount will be reduced to $750 per month when he reaches the age of sixty-two and begins receiving Social Security benefits.[1]

[¶ 4] Hanson filed a petition for award of workers' compensation benefits. The hearing officer granted the petition, awarding Hanson ongoing partial benefits based on his average weekly wage of $1679, less a $400 per week imputed earning capacity. The hearing officer reduced this amount to the statutory maximum benefit pursuant to 39–A M.R.S. § 211, and then applied the pension offset to further reduce the benefit by the after-tax amount of the pension pursuant to 39–A M.R.S. § 221.[2] Hanson contended that the statutory maximum should have been applied to calculate his weekly benefit only after the pension offset was taken.

[¶ 5] Hanson filed a petition for additional findings of fact and conclusions of law and proposed findings, pursuant to which the hearing officer corrected some figures and explained her reasoning, but did not alter the decision. Hanson filed a petition for appellate review, which we granted pursuant to M.R.App. P. 23(c) and 39–A M.R.S. § 322 (2009).

## II. LEGAL ANALYSIS

█ [¶ 6] The issue for us to determine is whether 39–A M.R.S. §§ 211, 213

---

1. Hanson could have chosen to receive $900 per month in pension benefits for the rest of his life in lieu of the Social Security enhancement. The parties agreed to base the pension offset on the $900 per month figure, rather than reducing the offset after Hanson began to receive Social Security benefits.

2. Title 39–A M.R.S. § 221 (2009) was further amended in 2010 by P.L. 2009, ch. 521 (effective July 12, 2010) to clarify the application of the statute to disability insurance payments. That amendment does not affect the issues in this case, because there is no disability insurance payment being offset here.

and 221 require that an employee's workers' compensation benefit be reduced to the statutory maximum before the pension offset is taken, or whether the statutory maximum should be applied after the pension offset is taken.

[¶ 7] The statutory maximum weekly benefit is established pursuant to 39-A M.R.S. § 211, which states:

Effective January 1, 1993, the maximum weekly benefit payable under section 212, 213 or 215 is $441 or 90% of [the] state average weekly wage, whichever is higher. Beginning on July 1, 1994, the maximum benefit level is the higher of $441 or 90% of the state average weekly wage as adjusted annually utilizing the state average weekly wage as determined by the Department of Labor.

[¶ 8] For the year July 1, 2009, to June 30, 2010, the statutory maximum weekly benefit calculated pursuant to section 211 is $616.74.

[¶ 9] Partial incapacity benefits calculated pursuant to 39-A M.R.S. § 213(1) must "not [be] more than the maximum benefit under section 211."[3] When partial incapacity benefits are paid and a pension offset is required, the offset is calculated pursuant to the coordination of benefits provisions of 39-A M.R.S. § 221. The portions of the coordination of benefits statute applicable to this case state:

§ 221. Coordination of benefits

1. **Application.** This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 with respect to the same time period for which the employee is also receiving or has received payments for:

. . . .

C. Pension or retirement payments pursuant to a plan or program established or maintained by the employer.

. . . .

3. **Coordination of benefits.** Benefit payments subject to this section must be reduced in accordance with the following provisions.

. . . .

D. Except as provided in subsections 6 and 7, a credit or reduction of benefits otherwise payable for any week may not be taken under this section until there has been a determination of the benefit amount otherwise payable to the employee under section 212 or 213 and the employee has begun receiving the benefit payments.

[¶ 10] Subsection (3)(D) of section 221 states in plain language that the pension offset must not be taken until there has first been a calculation of the benefits that would be payable to the employee under section 213, including any necessary reduction of benefits to the statutory maximum.

[¶ 11] The differing positions of the employee and the employer regarding payment calculations are outlined below.

*Employee's position*

| | |
|---|---|
| Compensation rate: | $889.47 [4] |
| Post injury comp. rate: | $626.24 [5] |
| Pension offset: | ($185.91) |
| Weekly benefit | $440.33 |

*Employer's position*

39-A M.R.S. § 213(1) (2009).

---

3. Section 213 governs partial incapacity benefits, and provides in pertinent part:

While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211.

4. The compensation rate for Hanson's average weekly wage of $1679 is $889.47.

5. The post-injury compensation rate of $626.24 is calculated by subtracting $263.23, the compensation rate for Hanson's imputed $400 per week post-injury earning capacity, from the $889.47 compensation rate.

| | |
|---|---|
| Compensation rate: | $889.47 |
| Post injury comp. rate: | $626.24 |
| Reduce to stat. max. | $616.74 [6] |
| Pension offset: | ($185.91) |
| Weekly benefit | $430.83 |

[¶ 12] When construing provisions of the Workers' Compensation Act, our purpose is to give effect to the Legislature's intent. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). In so doing, we first look to the plain meaning of the statutory language, and construe that language to avoid absurd, illogical, or inconsistent results. *Id.* When a statute is not ambiguous, we will interpret the statute directly, without applying rules of construction or examining legislative history or agency interpretation. *See McGee v. Sec'y of State*, 2006 ME 50, ¶ 18, 896 A.2d 933, 939–40. We will look to rules of construction and other extraneous aids in interpretation of a statute only when we have determined that the statute is ambiguous. *Darling's v. Ford Motor Co.*, 2003 ME 21, ¶ 7, 825 A.2d 344, 346.

[¶ 13] In general, wage loss benefits are calculated as eighty percent of the difference between an employee's after-tax average weekly wage at the time of the injury and the employee's post-injury earning capacity, if any, with the result capped at the statutory maximum level. 39–A M.R.S. §§ 212, 213 (2009).

[¶ 14] The hearing officer reduced Hanson's workers' compensation benefit to the statutory maximum before taking the offset, resulting in a lower workers' compensation benefit to the employee. Citing *Ricci v. Mercy Hospital*, 2002 ME 173, 812 A.2d 250, the hearing officer reasoned that the employer's "benefit obligation" must be determined before taking any offsets, and that the "benefit obligation," governed by section 213, is limited by the statutory maximum.

[¶ 15] The hearing officer's interpretation of the application of the pension offset pursuant to the coordination of benefits provisions of section 221 is correct. The plain language of the portions of section 221 quoted above require that before any pension offset is calculated, the benefits payable pursuant to section 213 must first be calculated. If that calculation exceeds that statutory maximum, then the amount payable must be reduced to the statutory maximum pursuant to section 213(1), whether there is to be a pension offset or not. The pension offset pursuant to section 221, if any, must then be calculated to reduce the benefits otherwise payable pursuant to section 213.

The entry is:

Decision of the hearing officer affirmed.

---

6. The statutory maximum until July 1, 2010, is $616.74. The record also includes references to and calculations based on a statutory maximum of $596.42, which was the statutory maximum until July 1, 2009, during the period the order on appeal was entered.