2011 ME 126

**Charles DOUGHTY**

v.

**WORK OPPORTUNITIES
UNLIMITED/LEDDY
GROUP, et al.**

Supreme Judicial Court of Maine.

Argued: April 13, 2011.
Decided: Dec. 13, 2011.

James J. MacAdam, Esq., and David E. Hirtle, Esq. (orally), MacAdam Law Offices, P.A., Portland, for appellant Charles Doughty.

Cara L. Biddings, Esq. (orally), Robinson, Kriger & McCallum, Portland, for

appellee Work Opportunities Unlimited/Leddy Group.

Allan M. Muir, Esq. (orally), Pierce Atwood LLP, Portland, for appellees Poland Spring Water Co./Nestlé Waters Inc. and American Home Assurance Co./Sedgwick CMS.

Thomas E. Getchell, Esq., Troubh Heisler, Portland, for amicus curiae Project Staffing, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and LEVY, MEAD, and GORMAN, JJ.

Dissent: ALEXANDER, SILVER, and JABAR, JJ.

GORMAN, J.

[¶ 1] Charles Doughty appeals from a decision of a Workers' Compensation Board Hearing Officer (*Collier, HO*), granting his petition for award against Work Opportunities Unlimited/Leddy Group, an employment agency, but denying his petitions to remedy discrimination pursuant to 39–A M.R.S. § 353 (2010) against Work Opportunities and Poland Spring Water Co./Nestle Waters, Inc.[1] Doughty contends mainly that the hearing officer erred by denying the petition to remedy discrimination against Poland Spring on the ground that Doughty was not in an employer-employee relationship with Poland Spring. We affirm the decision.

## I. BACKGROUND

[¶ 2] Work Opportunities hired Charles Doughty in May of 2008, and assigned him to work at Poland Spring's bottling facility in Hollis. Work Opportunities paid Doughty's salary, and Poland Spring paid Work Opportunities a fee for his services. In general, Poland Spring uses agency-supplied temporary workers on an as-needed or seasonal basis, and then hires its employees from the pool of temporary workers.

[¶ 3] On August 13, 2008, Doughty fell at the Poland Spring plant while attempting to clear a jam in the filler machine, and hit his head. A Poland Spring supervisor took him to the emergency room, where the treating physician diagnosed a closed head injury, noting that he had "minimal mechanism of injury with no evident trauma to his head and no ongoing symptoms."

[¶ 4] Immediately after the injury, Poland Spring's production manager decided that Doughty could no longer work there because he had committed an unsafe act, as evidenced by the accident. The production manager informed Work Opportunities that Doughty's assignment at Poland Spring had ended. When the Work Opportunities representative called Doughty to tell him that there was no need for him to return to Poland Spring, Doughty informed her of his injury.

[¶ 5] On August 18, Doughty returned to the emergency room, complaining of headaches. He had radiologic tests performed, and was referred to his own physician for any follow up. Doughty saw his personal physician on August 21, who took him out of work for headaches and neck pain secondary to probable post-concussion symptoms. That physician released him to full duty work as of September 17.

[¶ 6] During the same period of time, Work Opportunities scheduled appoint-

---

1. The hearing officer also denied Doughty's petition for award against Poland Spring. Doughty does not appeal that determination.

ments for Doughty with its medical provider. Doughty missed several appointments and did not return calls from Work Opportunities. After Doughty failed to show up for another scheduled medical appointment on October 3, 2008, Work Opportunities determined that Doughty would no longer be eligible for work assignments. Although this was not communicated to Doughty, he never returned to work for Work Opportunities.

[¶ 7] In November of 2008, Doughty filed petitions for award and to remedy discrimination pursuant to 39–A M.R.S. § 353 against Work Opportunities and, in January 2009, filed similar petitions against Poland Spring. The petitions alleged that he had been injured while working on August 13, and that he had been fired for exercising his rights under the Workers' Compensation Act. The hearing officer granted the petition for award against Work Opportunities, awarding Doughty total incapacity benefits for the thirty-five-day period that his doctor had taken him out of work. The hearing officer denied the petitions to remedy discrimination against Work Opportunities[2] and Poland Spring.

[¶ 8] The hearing officer specifically determined that Doughty was an employee of Work Opportunities, and was not an employee of Poland Spring, because Doughty did not have a "contract for hire" with Poland Spring pursuant to 39–A M.R.S. § 102(11)(A) (2010) (defining "em-

ployee" as "every person in the service of another under any contract of hire, express or implied, oral or written ...").  The hearing officer concluded that section 353 of the Workers' Compensation Act does not provide a temporary worker employed by an insured employment agency a right of action for discrimination against the employment agency's client when there is no such contract. The hearing officer further determined that 39–A M.R.S. § 104 (2010), which extends employers' immunity from suit for work injuries to employers that hire temporary workers through insured employment agencies, also does not authorize an action against Poland Spring pursuant to section 353.

[¶ 9] Doughty filed a motion for additional findings of fact and conclusions of law, which the hearing officer denied. He then appealed, and we granted his petition for appellate review pursuant to 39–A M.R.S. § 322 (2010) and M.R.App. P. 23(c). Project Staffing, Inc., filed a brief as amicus curiae.

## II. DISCUSSION

[¶ 10] The issue for decision is whether an employee hired by an employment agency and injured while working for the agency's client has a right of action for discrimination pursuant to 39–A M.R.S. § 353 against both the employment agency and the client company, when the employee does not have a contract for hire with the client company.

2. Doughty contends on appeal that the hearing officer was compelled to find that Work Opportunities discriminated against him for asserting his right under the Workers' Compensation Act to treat with a medical provider of his choice, pursuant to 39–A M.R.S. § 206(2) (2010). The key question for determination on a discrimination claim is whether the motivation for taking an adverse employment action against an employee "was rooted substantially or significantly in the em-

ployee's exercise of his rights under the Workers' Compensation Act." *Maietta v. Town of Scarborough,* 2004 ME 97, ¶ 14, 854 A.2d 223 (quotation marks omitted). The hearing officer found as a matter of fact that Work Opportunities did not terminate Doughty for asserting his right to treat with a medical provider of his choice. We do not disturb that finding. *See* 39–A M.R.S. §§ 318, 322(3) (2010); *see also Leighton v. S.D. Warren Co.,* 2005 ME 111, ¶ 22, 883 A.2d 906.

[¶ 11]  The issue of employment status is a mixed question of law and fact. *Marcoux v. Parker Hannifin/Nichols Portland Div.*, 2005 ME 107, ¶ 13, 881 A.2d 1138.  "We give deference to the [board's] findings, and will vacate a decision regarding the employment relationship only when it falls outside the decisional range in which reasonable [hearing officers], acting rationally, could disagree, or when a [hearing officer] misconceives the meaning of the applicable legal standard." *West v. C.A.M. Logging*, 670 A.2d 934, 937 (Me.1996) (quotation marks omitted); *see also Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me.1982).

[¶ 12]  "When construing provisions of the Workers' Compensation Act, our purpose is to give effect to the Legislature's intent." *Hanson v. S.D. Warren Co.*, 2010 ME 51, ¶ 12, 997 A.2d 730.  "In so doing, we first look to the plain meaning of the statutory language, and construe that language to avoid absurd, illogical, or inconsistent results." *Id.* We also consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Davis v. Scott Paper Co.*, 507 A.2d 581, 583 (Me.1986).

[¶ 13]  Two provisions of the Workers' Compensation Act must be discussed to explain our decision: title 39–A M.R.S. §§ 353 and 104.  Section 353 governs actions brought by an employee to remedy discrimination and provides:

> An employee may not be discriminated against by any employer in any way for testifying or asserting any claim under this Act. Any employee who is so discriminated against may file a petition alleging a violation of this section.  The matter must be referred to a hearing officer for a formal hearing under section 315, but any hearing officer who has previously rendered any decision concerning the claim must be excluded.  If the employee prevails at this hearing, the hearing officer may award the employee reinstatement to the employee's previous job, payment of back wages, reestablishment of employee benefits and reasonable attorney's fees.
>
> *This section applies only to an employer against whom the employee has testified or asserted a claim under this Act. Discrimination by an employer who is not the same employer against whom the employee has testified or asserted a claim under this Act is governed by Title 5, section 4572, subsection 1, paragraph A.*

(Emphasis added.)

[¶ 14]  Title 39–A M.R.S. § 104 extends immunity from civil liability to employers who use private employment agencies to provide temporary help, so long as the employment agency secures workers' compensation insurance.  It provides in relevant part:

> An employer who has secured the payment of compensation in conformity with sections 401 to 407 is exempt from civil actions, either at common law or under sections 901 to 908; Title 14, sections 8101 to 8118; and Title 18–A, section 2–804, involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries. *An employer that uses a private employment agency for temporary help services is entitled to the same immunity from civil actions by employees of the temporary help service as is granted with respect to the employer's own employees as long as the temporary help service has secured the payment of compensation in conformity with sections 401 to 407.* "Temporary help services" means a service where an agency assigns its

own employees to a 3rd party to work under the direction and control of the 3rd party to support or supplement the 3rd party's work force in work situations such as employee absences, temporary skill shortages, seasonal work load conditions and special assignments and projects.

(Emphasis added.)

[¶ 15] The hearing officer determined that (1) section 104 assigns liability for workers' compensation claims to the employment agency because it relieves the client company of liability under the Act if the employment agency secures the payment of compensation; (2) because Doughty did not have a contract for hire with Poland Spring, Poland Spring was not his employer and section 353 therefore did not give Doughty a right of action against Poland Spring; and (3) although Doughty was precluded from bringing a discrimination claim under the Act against Poland Spring, he was not without a remedy—pursuant to section 353, he has a remedy against Poland Spring under the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A) (2010).

■ [¶ 16] Doughty contends that the hearing officer erred when determining that he did not have a right of action against Poland Spring pursuant to section 353 on the basis that Poland Spring was not his employer. Doughty asserts that both Work Opportunities and Poland Spring were his employers because he had an employment contract with Work Opportunities and because he worked under Poland Spring's control. Nothing in the Workers' Compensation Act precludes simultaneous employment by two different employers, he contends.

[¶ 17] Although we have suggested that the concept of joint employment, under which two employers could be jointly liable under the Workers' Compensation Act, might apply in Maine, we have not expressly adopted or applied it. *See Bean v. Alrora Timber, Inc.*, 489 A.2d 1086, 1087 (Me.1985) (not deciding whether joint employment existed between the two potentially joint employers because actual employer was independent contractor). Professor Larson notes that the concept of dual employment is well established in several states, as follows:

When a[n] employer lends an employee to another party, that party becomes liable for worker's [sic] compensation only if

(a) the employee has made a contract of hire, express or implied, with the second employer;

(b) the work being done is essentially that of the second employer; and

(c) the second employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers will be liable for workers' compensation and both will both have the benefit of the exclusivity defense to tort claims.

Under this doctrine, the lending employer is known as the "general employer" and the borrowing employer, the "special employer." Because the inquiry into the employment relationship between the special employer and the employee is a factual one, courts at times have looked outside the terms of any contract between the two employers, to determine the actual relationships of the parties.

In this context some states place special emphasis on the right to control, and some states apply a longer list of criteria, but the various renditions of the special employer test typically, though not always, require consideration of the factors listed above.

In one sense, the lent-employee doctrine is not a separate doctrine at all. Theoretically, the process of determining whether the special employer is liable for compensation consists simply of applying the basic tests of employment set out in an earlier chapter. If they are satisfied, the presence of a general employer somewhere in the background cannot change the conclusion that the special employer has qualified as an employer of this employee for compensation purposes.
3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 67.01[1], [2] (2011) (footnotes omitted).

[¶ 18] When determining that there was no employment relationship between Doughty and Poland Spring, the hearing officer looked to the Larson factors, and focused on the Act's general definition of "employee," which "includes ... every person in the service of another *under any contract of hire*, express or implied, oral or written...." 39–A M.R.S. § 102(11)(A) (emphasis added).

[¶ 19] Doughty argues that the statutory definition is of minimal importance here, and the control test should apply, citing *Marcoux*, 2005 ME 107, 881 A.2d 1138. In *Marcoux*, the injured employee was an on-site coordinator of Kelly Services' temporary employees who were assigned to work at Nichols's plant. *Id.* ¶ 2. The employee slipped on Nichols's premises while performing work on Kelly's behalf. *Id.* ¶ 3. Kelly had secured workers' compensation insurance, and Marcoux brought her claim for benefits against Kelly. *Id.* ¶ 4. She also brought a negligence action against Nichols. *Id.*

[¶ 20] At issue was whether section 104 extended immunity from suit to Nichols. We examined the language in section 104 defining "temporary help services" as a "service where an agency assigns its own employees to a 3rd party to work under the direction and control of the 3rd party," 39–A M.R.S. § 104, and construed it to mean that immunity from suit applies only when the loaned employee is under the direction and control of the third-party employer. *Marcoux*, 2005 ME 107, ¶ 12, 881 A.2d 1138. Because there were genuine issues of material fact with respect to the degree of control Nichols exercised over Marcoux as a supervisory employee, we affirmed the denial of the motion for a summary judgment. *Id.* ¶ 15.

[¶ 21] We also addressed whether an entity was an employer for purposes of immunity from suit in *Bourette v. Dresser Industries, Inc.*, 481 A.2d 170 (Me.1984). In that case, Westinghouse Corporation had a contract to do specific work at a power plant involving maintenance and inspection of relief valves manufactured by Dresser Industries. *Id.* at 172. Plaintiffs were millwrights assigned by their union to work for Westinghouse at the power plant, pursuant to a contract between Westinghouse and the union. *Id.* Westinghouse assigned the plaintiffs to assist a Dresser employee who was attempting to fix leaks in the relief valves. *Id.* The plaintiffs had worked at the direction of the Dresser employee for four days when a valve exploded, injuring them. *Id.* They brought a tort action against Dresser, and a jury entered verdicts for the plaintiffs. *Id.*

[¶ 22] Dresser argued that the plaintiffs were its employees and should have been barred from bringing suit by the Workers' Compensation Act's exclusive remedy provision. *Id.* The trial court determined that neither the plaintiffs nor Dresser intended that the plaintiffs become Dresser's employees, and thus no contract for hire had been entered into. *Id.*

[¶ 23] Dresser asserted on appeal that the "control" test should apply. *Id.* at 172–73. We disagreed, reasoning that the control test had evolved from common law decisions concerning an employer's vicarious liability for the acts of employees, and its purpose is "not coextensive with the underlying purposes of the statutory scheme." *Id.* at 173; *see also Timberlake*, 438 A.2d at 1296–97. "Under workers' compensation ... the statutory definition is of paramount importance, and the issue is whether the employee entered into a contract of hire with the special employer. In the absence of a contract, express or implied, the control test is unnecessary." *Bourette*, 481 A.2d at 173.

[¶ 24] Pursuant to section 104, both Work Opportunities and Poland Spring would be immune from suit in a negligence action brought by Doughty. However, employer status for purposes of immunity under section 104 does not confer employer status for purposes of a discrimination action under section 353. Instead, to decide whether Poland Spring, as a "special employer," is liable for compensation or other remedies under the Act, the hearing officer properly applied the factors identified in Larson's treatise: (1) the existence of an employment contract, (2) whether the work being done is that of the special employer, and (3) whether control is by the special employer. As he correctly found, although Doughty was doing Poland Spring's work, and although he was under its control, there was no contract, either express or implied, between Doughty and Poland Spring. Again, we note that the hearing officer denied Doughty's petition

for award against Poland Spring because he was not a Poland Spring employee, and Doughty has not appealed from that decision.

[¶ 25] If, as the dissenting opinion contends, the eight-part test from *Timberlake*, 438 A.2d at 1296, which traditionally has been used to determine whether an entity is an employer as opposed to an independent contractor, should be used in this context—to determine whether an employee of a temporary staffing agency is also the employee of the 3rd party employer—the result would be problematic. The Act defines "temporary help services" as

> a service where an agency assigns its own employees to a 3rd party *to work under the direction and control of the 3rd party* to support or supplement the 3rd party's work force in work situations such as employee absences, temporary skill shortages, seasonal work load conditions and special assignments and projects.

39–A M.R.S. § 104 (emphasis added). Thus, if the eight-part control test is the governing test, the outcome of the test, as applied to the employees of temporary help services, in most cases would be preordained because employees of temporary help services, by definition, work under the direction or control of the third-party employer. Thus, third-party employers will necessarily be found to be in an employer-employee relationship with most temporary workers.[3]

[¶ 26] The practical, unintended consequences of this approach would be significant. Because the Act requires every

---

3. *Marcoux v. Parker Hannifin/Nichols Portland Division*, 2005 ME 107, 881 A.2d 1138, provides an example of when the result would not be preordained. We held that a supervisory employee, although employed by a private agency, would not provide "temporary help services," pursuant to section 104 for

purposes of the third-party employer's immunity from tort liability, if she could establish that she did not work under the third-party employer's control. *Id.* ¶ 12. In this case, it is established that Doughty worked under Poland Spring's control.

employer to "secure the payment of compensation ... with respect to all employees," 39–A M.R.S. 401(1) (2010), two workers' compensation insurance policies would have to be acquired for a single employee: one by the temporary help service and the other by the 3rd party employer. This outcome is illogical and cannot be squared with the Legislature's goals in reforming the Workers' Compensation Act, which include reducing workers' compensation costs to employers and attracting employers to the state, as well as cutting costs to the system as a whole. *See Doucette v. Hallsmith/Sysco Food Servs., Inc.*, 2011 ME 68, ¶ 16 n. 5, 21 A.3d 99; *Temm v. S.D. Warren Co.*, 2005 ME 118, ¶ 13, 887 A.2d 39.

[¶ 27] The hearing officer did not misconceive the legal standard when focusing on whether a contract for hire existed between Doughty and Poland Spring pursuant to section 102(11)(A) and *Bourette*, and did not err in concluding that Doughty had a contract for hire only with Work Opportunities.

[¶ 28] This holding is consistent with the overall statutory scheme established by sections 104 and 353. Section 104, which grants a special employer immunity from civil suit if the general employer has secured the payment of claims brought pursuant to the Act, has no specific applicability to the issue presented by this case. Because Section 104 is the only provision in the Act that addresses temporary workers, however, the hearing officer's reference to it is understandable.

[¶ 29] Section 353, which applies only to an employer against whom the employee has testified or asserted a claim under this Act, requires that there be a determination as to whether there is an employer-employee relationship between the petitioning employee and the named employer. Discrimination by an employer who is not the same employer against whom the employee has testified or asserted a claim under this Act is governed by Title 5, Section 4572. *See Laskey v. Sappi Fine Paper*, 2003 ME 48, ¶ 14, 820 A.2d 579 ("Section 4572(1)(A)(1) does not suggest a determination by the Legislature that section 353 was intended to occupy the field of discrimination claims by injured workers to the exclusion of the Maine Human Rights Act or other laws that may provide protection for individuals with work limitations or disabilities."). If the employee does not have a claim against a 3rd party "employer" pursuant to the Act, the employee may pursue a remedy for discrimination under the Maine Human Rights Act.[4] The potential remedies for a discrimination claim under the Maine Human Rights Act are broader than those for a discrimination claim under the Workers' Compensation Act. *Compare* 39–A M.R.S. § 353 with 5 M.R.S. §§ 4613(2)(B), 4614 (2010).

The entry is:

The judgment of the Workers' Compensation Board Hearing Officer is affirmed.

JABAR, J., with whom ALEXANDER, J., and SILVER, J., join, dissenting.

[¶ 30] I respectfully dissent because Charles Doughty is an employee pursuant to the traditional test, and he is also an employee pursuant to the dual/lent employee doctrine. As presented to us, Doughty's employment status is the central issue in reviewing the hearing officer's denial of Doughty's petition against Poland Spring to remedy discrimination. *See* 39–

4. Because Doughty does not contend that Work Opportunities may be held liable, under the Act, for acts of discrimination against its employees by its client, Poland Spring, we have no reason to consider that argument.

A M.R.S. § 353 (2010) ("An *employee* may not be discriminated against by any *employer* in any way for testifying or asserting any claim under this Act." (emphasis added)). The hearing officer misconceived the meaning of the applicable legal standard in determining whether Doughty was an employee of Poland Spring.

## I. DISCUSSION

[¶ 31] After the initial startup of its plant in Hollis approximately ten years ago, Poland Spring has hired all of its employees exclusively through temporary staffing agencies. In the spring of 2008, Doughty sought employment at Poland Spring by submitting an application with Work Opportunities. After an interview with Poland Spring officials, Doughty was hired. He began work filling, capping, and labeling bottles as they passed through a large filling machine. Poland Spring controlled Doughty's schedule and provided all the equipment and machines for him to work with. He was paid by time worked, and performed work that was part of Poland Spring's regular business. Doughty had two Poland Spring supervisors and no Work Opportunities supervisor.

[¶ 32] The day following Doughty's workplace injury, Poland Spring notified Work Opportunities that because of the accident they were terminating their relationship with Doughty and he was not to return to Poland Spring.

[¶ 33] The hearing officer erred in his decision when he stated that section 104 assigned liability for compensation cases against Poland Spring to the referring agency's insurance carrier. Section 104 affords employers who hire temporary employees through temporary staffing companies protection from civil lawsuits and does not assign liability for workers' compensation injuries to the staffing agency's insurance carrier, nor does it shed light on

the definition of an employee under Maine Workers' Compensation Act. 39–A M.R.S. § 104 (2010). Section 104 states:

> An employer that uses a private employment agency for temporary help services is entitled to the same immunity from civil actions by employees of the temporary help service as is granted with respect to the employer's own employees.... "Temporary help services" means a service where an agency assigns its own employees to a ... 3rd party's work force in work situations such as employee absences, temporary skill shortages, seasonal work load conditions and special assignments and projects.

39–A M.R.S. § 104. Poland Spring did not use Work Opportunities for these purposes. For the past ten years Poland Spring hired all of its employees through Work Opportunities or other staffing agencies. In effect, Poland Spring subcontracted out work that normally would have been carried out by its human resources department.

[¶ 34] Because this case does not involve the issue of immunity surrounding a civil law suit, section 104 should play no part in determining who is responsible for workers' compensation benefits arising out of workplace injuries or who an *employee* is for purposes of benefits under the Act. There is significant Maine authority that defines who an employee is for purposes of the Act.

### A. Traditional Test

[¶ 35] Subject to certain exceptions not applicable here, an "employee" is broadly defined in our Workers' Compensation Act as "every person in the service of another under any contract of hire, express or implied, oral or written." 39–A M.R.S. § 102(11)(A) (2010). This language—"any contract of hire, express or implied, oral or

written"—has remained unchanged since the first workers' compensation statutes were enacted in 1915. *See* 39-A M.R.S. § 102(11)(A); 39 M.R.S.A. § 2(5)(A) (Supp.1992); R.S. ch. 55, § 2 (1930); P.L. 1915, ch. 295, § 1. Thus, whether an individual may pursue a claim for benefits against an employer, including a petition to remedy discrimination pursuant to 39-A M.R.S. § 353, depends upon whether that individual is an "employee" pursuant to section 102(11)(A). In this case, the hearing officer did not properly focus on whether a "contract of hire, express or implied" existed between Doughty and Poland Spring pursuant to section 102(11)(A). The hearing officer mistakenly relied upon the language in section 104 when he stated in his decision, "[s]ection 104 assigns liability for the underlying compensation claims from temporary employees injured during job assignments to the compensation insurance of the employment agency."

[¶ 36] Since our decision in *Murray's Case*, 130 Me. 181, 186, 154 A. 352, 354 (1931), we have consistently applied an eight-part test in determining whether an individual meets the statutory definition of "employee" as currently codified at section 102(11)(A):

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

*Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me.1982) (quotation marks omitted); *see also West v. C.A.M. Logging*, 670 A.2d 934, 936–37 (Me.1996); *Stone v. Thorbjornson*, 656 A.2d 1211, 1213 (Me. 1995); *Black v. Black Bros. Constr.*, 381 A.2d 648, 650–51 (Me.1978); *Madore v. Liberty Nat'l Bank*, 289 A.2d 36, 38 (Me. 1972); *Kirk v. Yarmouth Lime Co.*, 137 Me. 73, 74–79, 15 A.2d 184, 185–88 (1940); *Clark's Case*, 124 Me. 47, 49–51, 126 A. 18, 19–21 (1924); 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 60.01 (2011) (identifying a list of similar factors, derived from the Restatement (Second) of Agency § 220 (1958), with which "practically every court in the Anglo–American world would agree").

[¶ 37] Of particular note, we have reaffirmed the applicability of the eight-part test notwithstanding the absence of a written contract, or the expressed or contrary intentions of the parties. The need to carefully scrutinize the particular relationship in question has been aptly summarized as follows:

> With the advent of social and labor legislation, ..., and other modern enactments drawing a distinction between independent contractors and employees, there has been an increasing effort on the part of employers to avoid both the financial cost and the bookkeeping and reporting inconvenience that goes with work[er]'s compensation, unemployment compensation, social security, and the like. This effort usually takes the form of subcontracting portions of the employer's production and distribution process, particularly in peripheral areas like obtaining raw material, trucking, delivering and selling.... These arrangements are often carefully drawn with an eye to the "control" test....

*Timberlake*, 438 A.2d at 1298 (quoting 3 Arthur Larson & Lex K. Larson, *Larson's*

420

*Workers' Compensation Law* § 62.01 (1980)).[5]

[¶ 38] In his decision, the hearing officer summarily concluded, after referencing section 102(11)(A), that "Doughty had no contract of hire with Poland Spring." The hearing officer did not, as the Court suggests, "look[ ] to the Larson factors," nor did he engage in any analysis regarding why there was no "contract of hire, express or implied" between Doughty and Poland Spring. By failing to make findings or engage in an analysis established by our prior opinions, and by relying upon section 104 to assign responsibility for compensation claims against Poland Spring to the referring agency's carrier, the hearing officer misconceived the applicable legal standard in determining whether Doughty made "a contract of hire, express or implied" with Poland Spring.

[¶ 39] The Court correctly explains that we will vacate a hearing officer's decision on the issue of employment status "only when it falls outside the decisional range in which reasonable [hearing officers], acting rationally, could disagree, or when a [hearing officer] misconceives the meaning of the applicable legal standard." *West*, 670 A.2d at 937 (quotation marks omitted). Importantly, Doughty moved for additional findings of fact and conclusions of law pursuant to 39–A M.R.S. § 318 (2010); thus, "we do not assume that the Workers' Compensation Board hearing officer made all the necessary findings to support its judgment." *Lavoie v. Re–Harvest, Inc.*, 2009 ME 50, ¶ 10 n. 2, 973 A.2d 760. Rather, we "review only the factual findings actually made and the legal standards actually applied by the hearing officer" to determine if they are sufficient, as a matter of law, to support the result and if they are supported by evidence in the

record. *Daley v. Spinnaker Indus.*, 2002 ME 134, ¶ 17, 803 A.2d 446 (quotation marks omitted).

[¶ 40] In the absence of necessary findings, the normal recourse would be to remand the matter to the hearing officer to make sufficient and clear findings of fact. *See Harvey v. Dow*, 2011 ME 4, ¶ 8, 11 A.3d 303 ("Where findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue." (quotation marks omitted)). However, on this record the only conclusion that can be reached is that Doughty was an "employee" of Poland Spring. During pre-hearing discovery, Poland Spring admitted that Doughty (1) did not have a contract to perform piece work or work at a fixed price; (2) did not have the right to employ assistants; (3) was not responsible for furnishing tools, supplies, and materials; (4) was subject to Poland Spring's control regarding the progress of his work and his schedule; (5) performed work that was part of Poland Spring's regular business; and (6) was paid by time, not by the job. Applying the traditional test to these admitted facts can only lead to the conclusion that Doughty was an employee of Poland Spring.

**B. Dual/Lent Employee Doctrine**

[¶ 41] As set out in the Court's decision, the doctrine of dual or lent employment, under which an individual may be the "employee" of two employers for purposes of the Workers' Compensation Act, does not change the analysis. As Professor Larson has explained:

In one sense, the lent-employee doctrine is not a separate doctrine at all. Theoretically, the process of determining

5. This language remains unchanged in Larson's current treatise. 3 Arthur Larson & Lex

K. Larson, *Larson's Workers' Compensation Law* § 62.01 (2011).

whether the special employer is liable for compensation consists simply of applying the basic tests of employment set out in an earlier chapter. If they are satisfied, the presence of a general employer somewhere in the background cannot change the conclusion that the special employer has qualified as an employer of this employee for compensation purposes.

3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 67.01[2] (2011). Indeed, Professor Larson's recommended test incorporates the very same language as the statutory definition of "employee" found in 39–A M.R.S. § 102(11)(A):

> When a[n] employer lends an employee to another party, that party becomes liable for worker's [sic] compensation only if
>
> (a) the employee has made *a contract of hire, express or implied,* with the second employer;
>
> (b) the work being done is essentially that of the second employer; and
>
> (c) the second employer has the right to control the details of the work.

3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law,* § 67.01[1] (2011) (emphasis added). Subsection (a) above contains the exact same language as Maine's statute; therefore, the same test used in numerous Maine cases in determining whether a "contract of hire, express or implied" exists pursuant to section 102(11)(A) should be used in determining whether "a contract of hire, express or implied" exists in the dual/lent employment context.

[¶ 42] Doughty's employment with Poland Spring meets section (a) of Larson's test above because the language is identical to the language used in the Maine statute, and, as discussed in the previous section, Doughty meets the elements of

the traditional approach. Doughty's employment situation also meets the elements of section (b) and (c) of Larson's test because the work being done was essentially that of Poland Spring and Poland Spring had the right to control the details of his work. The concept of the dual/lent employee doctrine applies to the facts of this case.

[¶ 43] The Michigan courts have also recognized the concept of dual/lent employment. Maine's Workers' Compensation Act is heavily derived from Michigan's law and this Court has often considered Michigan decisions in interpreting Maine's statute. *See, e.g., Cavers v. Houston McLane Co.,* 2008 ME 164, ¶ 33, 958 A.2d 905; *Guiggey v. Great N. Paper, Inc.,* 1997 ME 232, ¶ 9, 704 A.2d 375.

[¶ 44] In the Michigan case *Renfroe v. Higgins Rack Coating & Manufacturing Co.,* Renfroe was assigned to work at Higgins Co. through a temporary employment agency. 17 Mich.App. 259, 169 N.W.2d 326, 327–28 (1969). After several weeks of working at Higgins Co., Renfroe was injured when his hand got caught in a punch press. *Id.* at 328. The court held that the defendant, Higgins Co., was immune from a tort suit because it was liable pursuant to workers' compensation law. *Id.* at 329–30. The court reasoned that Renfroe agreed to work for Higgins Co. and Higgins Co. could direct and control Renfroe while working at the factory, and therefore found that both Higgins Co. and the temporary employment agency were employers of Renfroe. *Id.* at 330. Significantly, the court noted:

> The economic reality of this case is that both [the temporary employment agency] and Higgins Co. were employers of ... Renfroe, each in a different way. It is not necessary to make fine semantic distinctions as to types of degrees of

control, etc. It is enough to say that either could be liable under the workmen's compensation act, therefore, both are protected by it.

*Id.* at 330.

[¶ 45] Professor Larson in his treatise, *Larson's Workers' Compensation Law,* identifies numerous cases from other jurisdictions that are similar if not identical to the facts of this case. 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law,* § 67.01[1] nn. 1–3 (2011). In *Anderson v. Tuboscope Vetco, Inc.,* a labor broker provided temporary employees, including Anderson, to Tuboscope. 9 P.3d 1013, 1015 (Alaska 2000). The court held that Tuboscope was an employer of Anderson pursuant to the Alaska Workers' Compensation Act because Tuboscope hired, trained, supervised, managed, and directed Anderson; therefore, there was an implied contract of employment. *Id.* at 1017–18. The court said that if "the temporary employer hires, trains, employs, directs, and reserves the right to terminate the temporary employee," then a contract exists between the employee and the temporary employer, and the labor broker only acts as a "payroll and benefits administrator." *Id.* at 1018.

[¶ 46] In *Nation v. Weiner,* a medical personnel company provided Nation to the hospital as a temporary nurse, and she had worked at the hospital for almost two years through the medical personnel company at the time she was injured. 145 Ariz. 414, 701 P.2d 1222, 1224 (Ariz.Ct. App.1985). The court held that the hospital was Nation's employer for the purposes of workers' compensation because the hospital had the right to control her work, she performed nursing services regularly provided at the hospital, and the length of her employment there suggested a work-for-hire situation. *Id.* at 1225–27. Citing Larson, the court said that Arizona courts

have acknowledged that an employee may have two separate employers. *Id.* at 1225–26. In *Whitehead v. Safway Steel Products, Inc.,* a temporary help agency assigned Whitehead to a job at Safway. 304 Md. 67, 497 A.2d 803, 805 (1985). The court held that Whitehead was an employee of Safway for workers' compensation purposes, finding that there was a contract for hire because Whitehead consented to the special employment relationship, the work was a part of Safway's regular business, and Safway had control over Whitehead. *Id.* at 811–12.

[¶ 47] In *LaVallie v. Simplex Wire & Cable Co.,* LaVallie accepted an assignment at Simplex through a firm that provided temporary labor to other businesses. 135 N.H. 692, 609 A.2d 1216, 1217 (1992). The court held that LaVallie was an employee of Simplex for workers' compensation purposes because LaVallie was under the direction of a Simplex foreman, Simplex had the right to terminate him, Simplex could control his work, and he consented to Simplex's control. *Id.* at 1217–19. In *Antheunisse v. Tiffany & Co.,* Tiffany orally contracted with a personnel agency for temporary help during the holiday season, and Tiffany screened and selected Antheunisse for this purpose. 229 N.J.Super. 399, 551 A.2d 1006, 1006–07 (N.J.Super.Ct.App.Div.1988). The court held that Tiffany was a special employer and therefore the remedy for Antheunisse's injuries was through workers' compensation because Antheunisse impliedly contracted with Tiffany when she accepted the terms of the employment, her assignments were a part of Tiffany's regular business, and she was under Tiffany's direction and control. *Id.* at 1007–08.

[¶ 48] In *Martin v. Phillips Petroleum Co.,* Martin worked at Phillips for over a year, although he was employed by a company that provided laborers to oil refiner-

ies and other industries. 42 Cal.App.3d 916, 117 Cal.Rptr. 269, 270 (1974) *overruled by Kowalski v. Shell Oil Co.*, 23 Cal.3d 168, 151 Cal.Rptr. 671, 676 n. 9, 588 P.2d 811 (1979) (holding that the ability of a special employer to remove an employee "does not necessarily indicate the existence of a special employment relationship," but upholding the concept of duel/lent employment). The court held that although Martin was injured in a locker room provided by the employment agency but located on Phillips's work site, Phillips was a special employer for workers' compensation purposes because Martin worked there for at least a year, he was subject to the control of Phillips's foreman, all of the tools and safety equipment were provided by Phillips, Phillips had the right to request that the employment agency take Martin off of the job, and Phillips supervised and controlled the details and the quality of the work.[6] *Martin*, 117 Cal.Rptr. at 272–73. Finally, in *Russell v. PPG Industries, Inc.*, Russell worked for a construction company that contracted with PPG to work on new equipment at a plant. 953 F.2d 326, 328 (7th Cir.1992). The court held that Russell was a loaned employee for workers' compensation purposes because PPG exercised control over Russell, PPG directly supervised him, and PPG treated him as if he were a regular employee. *Id.* at 328–31.

[¶ 49] Many of these cases arise in the context of a civil lawsuit, usually negligence, against the special employer rather than against the referring temporary staffing agency. They provide the same protection afforded by section 104 to compa-nies that hire temporary employees through staffing agencies, holding that the injured worker's remedy is limited to a workers' compensation claim against the special employer rather than a civil suit. These cases demonstrate that it is not logical or consistent to hold that a worker is an employee for purposes of the civil suit immunity provision of the workers' compensation law but not an employee for purposes of claiming benefits under the workers' compensation law. Poland Spring should not be permitted to be Doughty's employer when it is to their advantage, but not his employer when Doughty is seeking workers' compensation benefits.

[¶ 50] Doughty's situation fits the definition of a dual/lent employee. Even though he was under contract and was paid by Work Opportunities, Poland Spring controlled all aspects of his employment. As set out under the traditional test: "In one sense, the lent-employee doctrine is not a separate doctrine at all. Theoretically, the process of determining whether the special employer is liable for compensation consists simply of applying the basic tests of employment set out in an earlier chapter." 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 67.01[2] (2011).

## C. Maine Human Rights Act

[¶ 51] The Court's decision makes much of the fact that Doughty has a remedy pursuant to the Maine Human Rights Act (MHRA). He does not have a remedy if he fits the definition of an employee

---

6. The *Martin* court also held that even though the legislature, in the insurance code, recognized the respective liabilities of insurance carriers in a general-special employer situation by providing that the general employer is liable for the entire cost of compensation unless the special employer had the employee on its payroll, it does not purport to abrogate the liability of the special employer. *Martin v. Phillips Petroleum Co.*, 42 Cal.App.3d 916, 117 Cal.Rptr. 269, 272 (1974). Thus, the employee has the benefit of having the special employer as an additional party responsible for any industrial accident that he suffers on that employer's job. *Id.*

under the Act. Section 4572(1)(A)(1) states: "This paragraph [Unlawful Discrimination] does not apply to discrimination governed by Title 39–A, section 353." 5 M.R.S. § 4572(1)(A)(1) (2010).

[¶ 52] We shed some light on the scope of this subsection in *Laskey v. Sappi Fine Paper*, when we held that this exclusion under the MHRA exempts "only those claims for discrimination which arise in any way for testifying or asserting any claim under the Workers' Compensation Act." 2003 ME 48, ¶ 14, 820 A.2d 579 (quotation marks omitted). This is exactly what Doughty claimed in his petition. Question 2 of the petition asks how the employer discriminated and Doughty's petition states: "For claiming a workers' compensation injury." Therefore, since Doughty is an employee asserting that Poland Spring discriminated against him because he made a workers' compensation claim,[7] he is foreclosed from filing any claim with the Human Rights Commission pursuant to section 4572(1)(A)(1).

## II. CONCLUSION

[¶ 53] By affirming the hearing officer's decision, the Court is opening a loophole through which businesses may avoid workers' compensation liability for discrimination or reinstatement by hiring workers through temporary staffing agencies. Except for the fact that Work Opportunities paid him, Doughty's relationship with Poland Spring was no different than his co-workers who were paid directly by Poland Spring. This arrangement creates a separate class of workers, who, though working side-by-side with other Poland Spring workers, are not afforded the same benefits, protections, and rights.

Though Doughty's employment at Poland Spring through Work Opportunities affords him certain protections, he would be precluded, unlike many of his co-workers, from pursuing meaningful relief against Poland Spring. Although section 104 mandates that Work Opportunities provide workers' compensation coverage for employees referred to the workplace of Poland Spring as a condition for immunity from civil suits for workplace accidents at Poland Spring, and although Doughty received weekly benefits through Work Opportunities' insurance carrier, it does not remove Poland Spring's obligation to Doughty for workers' compensation benefits. Under the dual/lent employee doctrine either employer could be responsible for the employee's workers' compensation benefits. It is up to the insurance carriers to underwrite the coverage under these circumstances, and it should not be this Court's concern to interpret the law dependent upon how the insurance companies will handle the underwriting. Work Opportunities may be able to provide monetary benefits through its insurance carrier, and in such cases it would not make any difference to Doughty; however, Work Opportunities' insurance carrier cannot replace Poland Spring's underlying obligation for certain workers' compensation benefits such as petitions for reinstatement (pursuant to 39–A M.R.S. § 218 (2010)) with Poland Spring or for discrimination (pursuant to 39–A M.R.S. § 353) by Poland Spring.

[¶ 54] If the Legislature had intended to exclude temporary agency-referred workers from the statutory definition of "employee," it could very easily have done so. Section 102 contains over ten excep-

---

7. In *Shaver v. Poland Spring Bottling Corp.*, the Workers' Compensation Board determined that, when the employee gave notice of his injury, he was in fact "reporting a claim" pursuant to the Workers' Compensation Act, section 353. W.C.B. 320-06-01 (Me.App.Div. 2006).

tions to the definition of "employee." *See* 39–A M.R.S. § 102(11)(A)-(E) (2010). As things stand, there is no exception for workers hired through temporary help staffing agencies, and our action today will in effect engraft upon the statute another exception.

[¶ 55] It should take a clear legislative mandate for this Court to interpret legislation in a way that would limit workers' rights and benefits. The Legislature, in affording employers who hire through temporary staffing agencies protection from civil lawsuits by passing section 104, did not intend to eliminate an employee's right to pursue workers' compensation benefits for injuries suffered while working for the employer who is in control of the workplace and the working conditions.

[¶ 56] Whether we analyze the facts pursuant to the traditional test or pursuant to the dual/lent employee doctrine, Doughty was an employee of Poland Spring. As the facts are undisputed, I would conclude that Doughty was an employee of Poland Spring as a matter of law, and would remand the matter to the hearing officer for further proceedings on Doughty's petition against Poland Spring to remedy discrimination.