STATE OF MAINE                                    BUSINESS AND CONSUMER COURT

Cumberland, ss.


MUNICIPAL REVIEW COMMITTEE,
CITY OF WATERVILLE, TOWN OF BAR HARBOR,
TOWN OF FAIRFIELD, TOWN OF MOUNT DESERT
and TOWN OF ORONO

                          Plaintiffs

                    v.                              Docket No. BCD-CV-15-22

USA ENERGY GROUP, LLC

                          Defendant

PERC HOLDINGS, LLC and
PENOBSCOT ENERGY RECOVERY COMPANY, LP

                      Parties-in-interest

ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant USA Energy Group, LLC (USAE) has filed a Motion for Partial Summary

Judgment on the Amended Complaint filed against it by Plaintiff Municipal Review Committee,

Inc. (MRC) and five municipalities that are members of the MRC.   Plaintiffs oppose the

Motion, and USAE has filed a reply memorandum.  Oral argument was held July 11, 2016.

Plaintiffs' Amended Complaint contains nine counts:

Count I for declaratory judgment as to all Plaintiffs

Count II for breach of duty of loyalty as to the municipal Plaintiffs

Count III for breach of duty of care as to the municipal Plaintiffs

Count IV for breach of duty of good faith as to the municipal Plaintiffs

Count V for breach of the duty of fair dealing as to the municipal Plaintiffs

Count VI for breach of fiduciary duty as to the municipal Plaintiffs

Count VII for breach of contract as to all Plaintiffs

1

Count VIII for tortious interference as to all Plaintiffs

Count IX for injunctive relief as to the municipal Plaintiffs

The prayer for relief contained in the last paragraph of the Defendant's Motion for Partial Summary Judgment indicates that Defendant "requests this Court to enter summary judgment on all counts in Plaintiff[s'] Complaint," but as Plaintiffs point out, the Motion briefs only the Plaintiffs' claims in Counts II and IV through VIII, omitting Counts I, III and IX.

## *Background*

The pertinent factual background was partly set forth in this court's June 3, 2015 Order on Defendant's Motion to Dismiss. Essentially, Party-in-interest Penobscot Energy Recovery Company, LP ("the LP") is a Maine limited partnership formed for the purpose of owning and operating a 25.3 megawatt refuse-derived fuel waste-to-energy facility in Orrington, Maine. The limited partnership agreement is memorialized currently in the Fifth Amended and Restated Agreement of Limited Partnership of Penobscot Energy Recovery Company, Limited Partnership ["the Agreement"]. Plaintiff MRC is a named party and signatory to the Agreement. *See* Agreement at 1, 43.

The general partner of the LP is Defendant USAE, a Minnesota limited liability company. Plaintiff MRC is a "regional association" created by a number of municipalities in Maine to serve as their agent for purposes of their ownership of the Orrington waste-to-energy facility. *See* 38 M.R.S. §1303-C(24) (definition of "regional association" as "a nonprofit corporation that consists exclusively of municipalities and is organized under Title 13, chapter 81 or Title 13-B, for the purpose, among other permissible purposes, of owning, constructing or operating a solid waste disposal facility"); *id.* § 1304-B(5-A) (defining purpose and powers of regional associations).

2

MRC does not itself own any interest in the LP. The Agreement defines USAE as owner of 100% of the "general partner interests" and 47.48068% of the "limited partner interests" of the LP; PERC Holdings as owner of 26.99792% of the limited partner interests, and a group of municipalities defined in the Agreement as "Equity Charter Municipalities" (ECMs) as owning the remaining 25.52140% of the limited partner interests. The Agreement indicates that MRC was formed by the ECMs "to assist them in their dealings with the Partnership [and to serve] for certain purposes as agent for all Equity Charter Municipalities." Agreement ¶ 1.34, at 5. The ECMs include the five Plaintiff municipalities, which were joined after the action was filed to cure an issue as to MRC's standing to assert the claims that were set forth in MRC's complaint.

MRC and the municipal Plaintiffs charge that USAE has violated its obligations as general partner under the Agreement by using partnership resources to pay legal and lobbying expenses related to USAE's efforts to promote legislation referred to in the Amended Complaint and the summary judgment record as LD 1483. Plaintiffs assert that LD 1483 was inconsistent with the "economic interests" of the LP, and that USAE promoted the legislation without the consent and over the objections of MRC and/or the ECMs. They argue that USAE has wrongly applied and sought to apply resources of the LP to defray the expense of promoting LD 1483.

The Plaintiffs' six counts in Counts II through VII assert that the Agreement and applicable law imposed various duties upon USAE, and that USAE breached its contractual, legal and fiduciary obligations to the Plaintiffs by failing to obtain MRC's permission to advocate for LD 1483 and by applying LP assets toward the cost of lobbying for L.D. 1483. In a tortious interference count, Plaintiffs also accuse USAE of interfering with MRC's relationships with its member ECMs.

3

USAE has filed an amended counterclaim for declaratory relief and for money damages against MRC. Essentially, USAE's amended counterclaim asserts that LD 1483 would indeed have been consistent with the LP's interests and of economic benefit, and charges MRC with wrongfully opposing the legislation and interfering with USAE's activities.

## Standard of Review

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the [fact finder] must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

## Analysis

1. Counts II through VII: breach of duty of loyalty; breach of duty of care; breach of duty of good faith; breach of the duty of fair dealing; breach of fiduciary duty; breach of contract

Counts II through VII all assert breaches of duty arising out of the contract or out of the relationship between USAE and the Plaintiffs. In the court's view, the contract as well as the fact that USAE is the general partner of the LP does mean that USAE owed the Plaintiff municipalities and/or MRC the various contractual, fiduciary and legal duties alleged in Counts II and IV through VII. Count III of the Amended Complaint appears to be a negligence claim, inasmuch as it refers to USAE's duty of care to Plaintiffs, and it may be problematic in light of the economic loss doctrine, because Plaintiffs' claimed damages do not involve personal injury or physical damage to property. However, because this issue was not addressed in the

4

Defendant's Motion for Partial Summary Judgment, the viability of Count III will be addressed at a later time.

With regard to breach of the various contractual and legal duties alleged in Counts II through VII, the summary judgment record does establish the following genuine issues as to the following material facts:

- whether LD 1483 was indeed contrary to the interests of the LP, or at least was not relevant to the interests of the LP

- whether USAE violated any duty by lobbying for the passage of LD 1483?

- whether USAE violated any duty by using LP assets to fund its lobbying effort for LD 1483?

- whether USAE's lobbying effort for passage of LD 1483 caused Plaintiffs any harm or loss?

Because these facts are material and because Plaintiffs have shown that they are genuinely in dispute, USAE's Motion for Partial Summary Judgment will be denied as to Counts II through VII.

2. Count VIII: tortious interference as to all Plaintiffs

Count VIII of the Amended Complaint asserts that USAE committed the tort of tortious interference by going around MRC and attempting to induce the ECMs to support USAE's lobbying effort in favor of LD 1483. The independent cause of action known as tortious interference requires proof of interference with a contract or expectancy by means of fraud or intimidation or both. *See MacKerron v. Madura*, 445 A.2d 680, 683 (Me. 1982) (citing *Perkins v. Pendleton*, 90 Me. 166, 176, 38 A.96, 99 (1897).

The summary judgment record reveals two problems with the Plaintiffs' claim. First, they have not made a prima facie showing that USAE used fraud or intimidation in trying to

5

convince the ECMs to support LD 1483. The second and equally important problem is that the Plaintiffs have not shown that they sustained any loss or damage as a result of the alleged interference—LD 1483 was never enacted into law. At oral argument, Plaintiffs' counsel argued that Plaintiffs' damages consist of the LP funds that USAE used to help fund USAE's lobbying effort in support of LD 1483. However, USAE's alleged misuse of LP funds did not result from USAE's alleged contact with the ECMs. Plaintiffs have therefore failed to make a prima facie showing that the alleged interference caused them any cognizable loss or damage.

Accordingly, USAE is entitled to summary judgment on Count VIII of the Amended Complaint.

*Conclusion*

IT IS ORDERED:

(1) Defendant USAE's Motion for Partial Summary Judgment is denied as to Count II Counts IV through VII of the Amended Complaint, and is granted as to Count VIII of the Amended Complaint.

(2) Defendant USAE is granted summary judgment on Count VIII. Counts I through VII and IX remain unresolved in the case.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated July 19, 2016

_____
A. M. Horton
Justice

Entered on the Docket: 7-20-16
Copies sent via Mail __ Electronically ✓

STATE OF MAINE                                    BUSINESS AND CONSUMER COURT

Cumberland, ss.


MUNICIPAL REVIEW COMMITTEE

Plaintiff

v.                                              Docket No. BCD-CV-15-22 ✓

USA ENERGY GROUP, LLC

Defendant

PERC HOLDINGS, LLC and
PENOBSCOT ENERGY RECOVERY COMPANY, LP

Parties-in-interest

ORDER ON DEFENDANT'S MOTION TO DISMISS

Defendant USA Energy Group, LLC (USAE) has filed a Motion to Dismiss the

Complaint filed against it by Plaintiff Municipal Review Committee, Inc. (MRC). MRC

opposes the Motion, and USAE has filed a reply memorandum. Oral argument was held June

1, 2015.

*Background*

Party-in-interest Penobscot Energy Recovery Company, LP ("the LP") is a Maine

limited partnership formed for the purpose of owning and operating a 25.3 megawatt refuse-

derived fuel waste-to-energy facility in Orrington, Maine. The limited partnership agreement

is memorialized currently in the Fifth Amended and Restated Agreement of Limited

Partnership of Penobscot Energy Recovery Company, Limited Partnership ["the Agreement"],

1

attached to the Complaint in this case as Exhibit A.[1] Plaintiff MRC is a named party and signatory to the Agreement. *See* Agreement at 1, 43.

The general partner of the LP is Defendant USAE, a Minnesota limited liability company. The preamble to the Agreement identifies the limited partners of the LP as being party-in-interest PERC Holdings, LLC, also a Minnesota limited liability company, and Plaintiff MRC. However, as discussed in detail below, the Agreement does not define the term "limited partner" to include MRC, in contradiction to the preamble. *See Analysis* 1. MRC's Standing, *infra* at 6.

Plaintiff MRC is a "regional association" created by a number of municipalities in Maine to serve as their agent for purposes of their ownership of the Orrington waste-to-energy facility. *See* 38 M.R.S. §1303-C(24) (definition of "regional association" as "a nonprofit corporation that consists exclusively of municipalities and is organized under Title 13, chapter 81 or Title 13-B, for the purpose, among other permissible purposes, of owning, constructing or operating a solid waste disposal facility"); *id.* § 1304-B(5-A) (defining purpose and powers of regional associations).

MRC does not itself own any interest in the LP. The Agreement defines USAE as owner of 100% of the "general partner interests" and 47.48068% of the "limited partner interests" of the LP; PERC Holdings as owner of 26.99792% of the limited partner interests, and a group of municipalities defined in the Agreement as "Equity Charter Municipalities" (ECMs) as owning the remaining 25.52140% of the limited partner interests. Agreement at 1. The Agreement indicates that MRC was formed by the ECMs "to assist them in their dealings

---

[1] Because MRC and USAE agree that the attached Agreement reflects their relationship as it bears on the Motion to Dismiss, the court in this Order will consider the Agreement without converting the Motion into a motion for summary judgment. *See Moody v. State Liquor and Lottery Commission*, 2004 ME 20, ¶ 10, 843 A.2d 43, 48 ("official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint [can be considered] without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged").

2

with the Partnership [and to serve] for certain purposes as agent for all Equity Charter Municipalities." Agreement ¶ 1.34, at 5.

The case was originally filed in the Superior Court for Hancock County, then removed to the United States District Court for the District of Maine, then remanded to state court, then transferred to the Business and Consumer Court.

MRC's nine-count complaint seeks declaratory and injunctive relief, as well as money damages. It charges that, beginning in 2013 and continuing to the present, USAE has violated its obligations as general partner under the Agreement by using partnership resources to pay legal and lobbying expenses related to USAE's efforts to promote legislation referred to in the Complaint as LD 1483. The Complaint asserts that LD 1483 was inconsistent with the "economic interests" of the LP, and that USAE promoted the legislation without the consent and over the objections of MRC and/or the ECMs. The Complaint alleges that USAE has wrongly applied and sought to apply resources of the LP to defray the expense of promoting LD 1483. The Complaint in a tortious interference count also accuses USAE of interfering with MRC's relationships with its member ECMs

USAE has filed an amended counterclaim for declaratory relief and for money damages against MRC. Essentially, USAE's amended counterclaim asserts that LD 1483 would indeed have been consistent with the LP's interests and of economic benefit, and charges MRC with wrongfully opposing the legislation and interfering with USAE's activities.

USAE's Motion to Dismiss makes two major arguments:

- it asserts that MRC lacks standing to assert derivative claims on behalf of the ECMs and lacks standing in its own right

- it asserts that the Complaint fails to state a valid claim for tortious interference, the only claim that MRC arguably holds in its own right.

3

## Standard of Review

Because it asserts lack of standing and also failure to state a claim, USAE's Motion to Dismiss arises under two different subsections of Rule 12(b) of the Maine Rules of Civil Procedure. Motions based on failure to state a claim arise under Rule 12(b)(6), whereas motions challenging standing, which relates to the court's subject matter jurisdiction, are cognizable under Rule 12(b)(1). *See JP Morgan Chase Bank v. Harp*, 2011 ME 5, ¶7, 10 A.3d 718, 719; *Cloutier v. Turner*, 2012 ME 4, ¶ 8, 34 A.3d 1146.

The standard applicable to a Rule 12(b)(1) motion to dismiss for lack of standing is different than that applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. The favorable inference granted to the pleader under Rule 12(b)(6) is not necessarily accorded when the issue is one of subject matter jurisdiction: "When a motion to dismiss is based on the court's lack of subject matter jurisdiction, we make no favorable inferences in favor of the plaintiff such as we do when reviewing a motion to dismiss for failure to state a claim upon which relief can be granted." *Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 9, 962 A.2d 335, 338.

Moreover, the extent of review is different: whereas review under Rule 12(b)(6) is usually limited to the four corners of the pleading at issue, review when the motion generates a Rule 12(b)(1) issue as to subject matter jurisdiction extends to material outside the pleadings submitted by the parties to the motion. *See Davric Me. Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 6, 751 A.2d 1024, 1028.

## Analysis

### 1. MRC's Standing

"At a minimum, '[s]tanding to sue means that the party, at the commencement of the litigation, has sufficient personal stake in the controversy to obtain judicial resolution of that

4

controversy.'" *Mortgage Elec. Reg. Sys. v. Saunders,* 2010 ME 79, ¶ 7,2 A.3d 289, 293-94 (quoting *Halfway House Inc.,* 670 A.2d at 1379).

USAE's Motion asserts that MRC lacks standing because all of the claims it purports to assert in the Complaint are derivative claims that, under the Maine Limited Partnership Act, may be asserted only by a limited partner, and MRC is not a limited partner. It also argues that MRC lacks authority in its charter and bylaws to bring the action.

MRC's memorandum in opposition to the USAE Motion to Dismiss asserts that MRC has standing to sue on the claims set forth in the Complaint based on its status as a party to the Agreement and also by virtue of its status as agent and attorney in fact for the ECMs. As MRC argues, the Agreement and the state statute under which MRC was established as a regional association do confer upon regional associations broad authority to act as agent for their member municipalities. See 38 M.R.S. § 1304-B(5-A)(E) (list of functions, "among others," that a regional association may be authorized by its bylaws to perform "on behalf of its members").

USAE responds by noting that, because MRC has no ownership interest in the LP, it cannot claim to have suffered any money damages as a result of the alleged improper use of LP resources to pay the expense of promoting LD 1483. USAE also contends that MRC's status as agent and holder of a power of attorney for the ECMs does not confer on it standing to sue on claims that belong to them. It is true that, absent an assignment of claims, MRC's status as agent and attorney in fact under power of attorney for the ECMs does not in itself give MRS standing to sue on claims that belong to the ECMs. "The grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name." *Advanced Magnetics, Inc. v. Bayfront Partners Inc.,* 106 F.3d 11, 17-18 (2d Cir. 1997).

5

On the other hand, MRC's status under the Agreement is not limited to agent and attorney-in fact for the ECMs. MRC is a named party to the Agreement, albeit as agent and for the benefit of the ECMs. Due apparently to imprecise drafting, the Agreement defines MRC's party status in contradictory terms. *Compare* Agreement at 1 ("USA Energy, PERC Holdings and the MRC, as limited partners, collectively own 90% of the interests in the Partnership") *with* Agreement ¶1.26, at 4 ("'Limited Partner' means USA Energy, PERC Holdings and each of the Equity Charter Municipalities or their permitted successors or lawful assigns"). Whether MRC is indeed a limited partner, or, as seems more likely, the nominee and agent of the ECMs as beneficial owners for purposes of the Agreement, it plainly is a party and signatory to the Agreement. *See* Agreement at 43.

Under basic principles of agency law, an agent who enters into a contract in the agent's own name on behalf of a principal, who may or may not be disclosed, may sue under the contract in the agent's own name, for the benefit of the principal. *See Vista Co. v. Columbia Pictures Indus.*, 725 F. Supp. 1286, 1290 (S.D.N.Y. 1989) (limited partnerships, who negotiated contracts on behalf of individual partners, entitled to bring action to enforce rights deriving from such contracts); *Mitsui & Co. v. Puerto Rico Water Resources Auth.*, 528 F. Supp. 768, 776–779 (D. P.R. 1981) (prime contractor, who entered into agreement on behalf of subcontractor, entitled to sue even though benefit accrued to subcontractor).

The Maine rule of civil procedure on real parties in interest, which is modeled on the counterpart federal rule, embraces this very principle: "[A] party with whom or in whose name a contract has been made for the benefit of another . . . may sue in that person's name without joining the party for whose benefit the action is brought . . ." M.R. Civ. P. 17(a); *see* Fed. R. Civ. P. 17(a). *See also* 4-17 Moore's Federal Practice—Civil § 17-10 ("A representative who enters into a contract for the benefit of a third party is a real party in interest entitled to

6

enforce that contract. The third-party need not be joined even though that person holds the beneficial interest under the contract. Although such actions are captioned in the real party representative's name, any recovery accrues to the third-party beneficiary").

Based on MRC's status as a named party and signatory to the Agreement, and notwithstanding the contradictory provisions defining its status, the court concludes that MRC has standing, as a named party to the Agreement, to sue in its own name to enforce the Agreement on behalf of and for the benefit of the ECMs it represents.

USAE's argument that MRC lacks authority in its enabling charter and bylaws to maintain this action rests on an unduly narrow and constrained reading of the enabling documents. The ECMs plainly have authorized MRC to act on their behalf in entering into the Agreement, and the Agreement itself authorizes any party to enforce its terms by means of proceedings in arbitration, if requested, or in the courts. *See* Agreement ¶ 14.12.[2]

However, this conclusion does not entirely answer the question raised by USAE's Motion. Because MRC is not a limited partner, it lacks standing to bring actions that arise purely under the Maine Limited Partnership Act, *see* 31 M.R.S. § 1423 ("A derivative action may be maintained only by a person that is a partner at the time the action is commenced . . .").

Thus, MRC's standing may have to be assessed on a claim-by-claim basis, depending on whether the claim in question is a direct claim that MRC as a party to the Agreement can assert, or is a derivative claim that only a limited partner can assert. Some of MRC's claims may be grounded both in contract and under the Act. For example, a claim that USAE has failed to comply with the Agreement provisions at Article 6.1(f), defining activities reserved for decision by the Oversight Committee, of which MRC is a member, is likely MRC's to assert,

---

[2] The arbitration provision at Article 14.13 of the Agreement provides that it may be invoked by any party, but apparently no party has chosen to do so.

7

but a limited partner might also be able to assert such a claim, although the remedies available to MRC may differ from those available to a limited partner.

### 2. Direct v. Derivative Claims

USAE's Motion accurately notes that MRC's Complaint is not specific on whether the claims asserted for breach of the Agreement and breach of USAE's general partner obligations. However, MRC's opposition clarifies that the claims are intended to be direct claims to enforce the provisions of the Agreement running to the benefit of MRC on behalf of the ECMs.

The court's impression is that some of the allegations of the Complaint would, if proved support derivative claims rather than direct claims. For example, the allegation at paragraph 24 of the Complaint that USAE wrongfully diverted about $200,000 of the LP's resources to itself seems to involve harm to all limited partners, not only the ECMs for which MRC is acting. On the other hand, it could be argued that, because MRC is a member of the Oversight Committee, and because the Agreement requires the general partner to obtain approval of the Oversight Committee for certain expenses, *see* Agreement

In any event, notwithstanding the liberal rules of notice pleading, USAE is entitled to require MRC to specify in its pleading, not merely in a memorandum in opposition, whether MRC's claims on behalf of the ECMs are direct or derivative. Such clarification could have been sought by means of a motion for more definite statement, but, to spare the parties and the court another round of motion practice, this Order simply requires MRC to clarify, through an amended complaint, which of the claims in Counts I through VII of the Complaint are direct and which are derivative.

As noted above, if MRC identifies a claim as derivative, it may encounter the standing issue anew, if the claim is one that only a limited partner can bring. In anticipation of exactly that scenario, MRC's counsel at oral argument indicated that several representative ECMs may

8

be joined as plaintiffs to eliminate any issues of standing. This step, if taken, will potentially render moot the standing issue, but if USAE disagrees it is free to raise the standing issue again in a further motion.

### 3. The Tortious Interference Claim

The issue with respect to the tortious interference claim at Count VIII of the Complaint is similar, in that MRC's complaint is unclear as to the precise basis for the claim. The independent cause of action known as tortious interference requires proof of interference with a contract or expectancy by means of fraud or intimidation or both. *See MacKerron v. Madura,* 445 A.2d 680, 683 (Me. 1982) (citing *Perkins v. Pendleton,* 90 Me. 166, 176, 38 A.96, 99 (1897).

Under the rules of notice pleading, and more so when fraud is alleged, *see* M.R. Civ. P. 9(b) (requirement of specificity in pleading fraud), a claim of tortious interference needs to indicate which means of interference is being alleged. MRC's memorandum responds that it should be obvious that intimidation is meant, but its complaint mentions neither intimidation nor threats, and leaves room for uncertainty about whether fraud or intimidation is meant. As with the direct/derivative claim issue, material gaps in a pleading need to be filled in through an amended pleading; explaining the gap in a separate memorandum is not sufficient.

### *Conclusion*

IT IS ORDERED:

(1) Defendant USAE's Motion to Dismiss is denied as to MRC's standing to assert claims arising from MRC's status as a party to the Agreement, but is granted to the extent that certain claims and relief sought may be derivative claims and relief that only a limited partner can assert and obtain, and also to the extent that the current complaint fails to allege the elements of direct or derivative claims and the elements of the tortious interference claim.

(2) Plaintiff MRC is granted leave to file an amended complaint, provided it does so within 30 days. If any of MRC's member municipalities will be joined as plaintiffs, they may be named as plaintiffs in the amended complaint without a formal motion to join.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated June 3, 2015

A. M. Horton
Justice

Entered on the Docket: 6-3-15
Copies sent via Mail ___ Electronically ✓

**Municipal Review Committee v. USA Energy Group, LLC, PERC Holdings, LLC and Penobscot Energy Recovery Company, LP**

**BCD-CV-2015-22**

**Municipal Review Committee**

    **Plaintiff**

    Counsel:                  William Devoe, Esq.
                                80 Exchange St.
                                PO Box 1210
                                Bangor, ME 04402-1210

**USA Energy Group, LLC, PERC Holdings, LLC and Penobscot Energy Recovery Company, LP**

    **Defendant**

    Counsel:                  David Walker, IV Esq.
                                84 Harlow St.
                                PO Box 1401
                                Bangor, ME 04402