STATE OF MAINE                                        SUPERIOR COURT
PENOBSCOT, SS.                                        CIVIL ACTION
                                                      DOCKET NO RE-16-068

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

          Plaintiff,
     v.                                               ORDER
FIRST MAGNUS FINANCIAL CORPORATION
JAY HAINES, and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC

          Defendant.

Plaintiff has filed an amended complaint for declaratory relief and to compel assignment, asking the Court to order that any interest that First Magnus has in the mortgage that is the subject of this proceeding be assigned to plaintiff and declare that Federal National Mortgage Association (FNMA) is the owner of all rights in the note and mortgage, is the mortgagee, and has standing to enforce the subject note through foreclosure for any breach of the obligations under the note. No defendant, including the mortgagor, has answered. After trial at which only the plaintiff appeared, the Court granted judgment to the defendants on January 24, 2018, and the plaintiff then filed a motion to reconsider, which the Court now addresses.

**Background**

FNMA is the current holder of a promissory note endorsed in blank dated October 27, 2005, given by Jay R. Haines to First Magnus in the amount of $121,500. After closing, First Magnus endorsed the note to Countrywide Bank, N.A. which executed an endorsement on the note to Countrywide Home Loans Inc., which executed an endorsement in blank. FNMA is the holder of the note. To secure the note, Haines executed and delivered to Mortgage Electronic Registration Systems, Inc. (MERS) as

1

nominee for First Magnus, its successors and assigns, a mortgage which was recorded on October 27, 2005. MERS assigned the mortgage to FNMA on December 7, 2015.[1]

Whether this complicated set of transactions entitles the plaintiff to have standing to foreclose this mortgage is answered by deciding one discrete issue:[2] does the Law Court's ruling in *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700, overrule a line of cases that articulated the equitable trust doctrine that "[w]here there is a separation of the note from the mortgage, the latter continues in force; and by the principles of a court of equity, the mortgagee becomes trustee for the holder of the note"? *Johnson v. Candage*, 31 Me. 28, 31 (1849). Having reviewed all relevant case law and arguments of counsel, I now answer that question in the negative and grant the motion to reconsider.

### Analysis

In *Greenleaf*, the Law Court addressed a mortgage similar to the one here and held that "notwithstanding its reference to MERS as the 'mortgagee of record,' the mortgage in fact granted to MERS 'only the right to record the mortgage' as the lender's nominee, and 'having only that right, MERS did not qualify as a mortgagee pursuant to our statute.'" *Id.* ¶ 14 (quoting *Mortg. Elec. Registration Sys. v. Saunders*, 2010 ME 79, ¶ 9, 2 A.3d 289). The Court then ruled that MERS, as a matter of law, did not have the right to assign the mortgage to Bank of America, which assignment was ineffectual, and in the absence

---

[1] It is apparent from the record that FNMA acquired this "loan" from Countrywide Home Loans Inc., now Bank of America, soon after the mortgage loan closing. We know that Countrywide was the holder of the note for a short period of time before endorsing it in blank. There is no indication, however, that it owned or possessed the mortgage and there is no evidence of an assignment of the mortgage to Countrywide or Bank of America. Because this litigation concerns ownership of the mortgage, there is no need for service upon Countrywide or Bank of America.

[2] The Court is aware that other issues have been raised in similar complaints for declaratory judgment, including justiciability, whether an underlying cause of action is required, and lack service of shareholders of a dissolved corporation. These issues have not been raised in this case and there is a limit to a court's obligation to raise and analyze every issue that defendants could have raised if they had decided to appear. Instead, I have focused on the issues raised.

2

of any evidence that the Bank owned Greenleaf's mortgage, the Bank "lacked standing to seek foreclosure on the mortgage and accompanying note." *Id.* ¶ 17. In my Decision after trial of this case, I did not apply the equitable trust doctrine, deciding that *Greenleaf* implicitly overruled those cases defining the doctrine. If the Law Court had applied the doctrine to the *Greenleaf* facts, I reasoned, the result would have been different. If the equitable trust doctrine were no longer good law, then my Decision after trial would be correct, however if the doctrine still has vitality, its application here would dictate a different result in this case.

The concept of equitable trust first appeared in recent foreclosure case law in *Saunders*, 2010 ME 79, 2A.3d 289. The Saunderses had executed a promissory note to Accredited Home Lenders, Inc. as well as a mortgage document in favor of MERS, solely as "nominee for [Accredited] and [Accredited]'s successors and assigns." MERS sought to foreclose and the Law Court ruled that MERS, unlike Accredited, did not have any stake in the foreclosure and therefore had no standing to initiate a foreclosure proceeding. In so ruling, the Court found that even though the mortgage document provided that MERS had "the right[] to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property," it actually only had the right to record the mortgage in a registry of deeds. *Id.* ¶ 11. It is important to recognize that in *Saunders*, unlike here, the note and mortgage were held by the same entity and the only question was whether MERS had standing. In an apparent effort to have the decision interpreted narrowly, the Law Court stated the following in a footnote: "We do not address the situation where the mortgage and note are truly held by different parties. *See, e.g. Averill v. Cone*, 129 Me. 9, 11-12, 149 A.297, 298-299 (1930); *Wyman v. Porter*, 108 Me. 110, 120, 79 A.371, 375 (1911); *Jordan v. Cheney*, 74 Me. 359, 361-62 (1883). When MERS filed its complaint against the Saunderses, Accredited was both the mortgagee and holder of the

3

note, and MERS held only the right to record the mortgage." *Id.* ¶ 11 n.3. The question of what would happen in a situation in which the note and mortgage were held by different entities was left open.

The facts of *Greenleaf* presented this precise situation. Because the *Greenleaf* MERS assignment was ineffectual, the mortgage was retained by an entity other than the note holder. As a result, it could be argued that the principles established in *Candage*, and confirmed in *Cone, Porter*, and *Cheney*,[1] could save the day for the bank. The contrary result in *Greenleaf* in which it was stated, "there is also no evidence in the record purporting to demonstrate that MERS acquired any authority with respect to Greenleaf's mortgage by any means other than that defined in the mortgage itself," *Greenleaf*, 2014 ME 89, ¶15, 96 A.3d 300, demonstrates that the Law Court was focusing only on MERS as a source of plaintiff's mortgage ownership and was not addressing how other doctrines or principles could affect ownership of the mortgage. Consistent with this interpretation, the decision in *Greenleaf* does not address any of the precedent defining the concept of equitable trust and does not address the topic in any way. There is no indication the issue was argued in *Greenleaf* and I must conclude that if the Law Court had intended to overrule or even distinguish the *Cheney* line of cases, it would have done so. Subsequent foreclosure case law in which the standing issue has even been referenced is also silent on the impact of the *Greenleaf* decision on this line of cases.[2] I am now hesitant

---

[1] I have not included an in-depth study of these and other cases that stand for the proposition that the mortgage follows the note because it is clear that the principle was settled Maine law prior to the *Greenleaf* decision. *See* John J. Aromando, *Standing to Foreclose in Maine:* Bank of America, N.A. v. Greenleaf, 29 Maine Bar J. 186 (2014).

[2] *See, e.g., Bank of Am., N.A. v. Greenleaf*, 2015 ME 127, ¶ 4, 124 A.3d 1122; *Homeward Residential, Inc. v. Gregor*, 2015 ME 108, ¶ 21, 122 A.3d 947; *U.S. Bank Nat'l Ass'n v. Adams*, 2014 ME 113, ¶ 3 n.1, 102 A.3d 774.

4

to find that the cases that firmly established this principle were overruled in *Greenleaf* without any analysis or mention by the Law Court that the overruling was taking place.

I also factor into this decision an appreciation of what I am asked to do. None of the served parties have filed an answer to the complaint or fashioned a whimper of opposition. The entity identified in the pleadings as potentially having an interest in the mortgage, First Magnus, no longer exists. MERS has not answered, nor have the homeowners. It is perfectly clear that no one involved contemplated a situation in which the note holder could not avail itself of the rights described in the mortgage if the terms of the note were not met. Additionally, the concept of ownership of a mortgage by an entity other than the owner of the note is a strange one. The only purpose of the mortgage is to secure a note and provide a source of compensation for a note holder should the terms of the note be breached. A mortgage appears to have no intrinsic value apart from its usefulness to the note holder and it is difficult to believe that the parties to a transaction contemplate that note holders intentionally separate themselves permanently from control or ownership over the related mortgage. It is only by operation of law, not by design of the parties, that this note truly parted company from the mortgage, and it appears that there is nothing to be gained by keeping the two apart. My conclusion that

On this point, I note that in the *Greenleaf* decision the Law Court determined that the mortgagee only assigned the right to record the mortgage, not the mortgage itself, so the note holder actually retained the mortgage. In reality, it could be argued that the mortgagee intended for the note to be separated from the mortgage causing MERS to be the mortgagee of record, but there was always an intent for the two be reunited if needed.

The undesirable situation presented here in which notes became separated from mortgages was initially caused by those who, in order to ease the process of mortgage securitization and thereby reap greater profits, created MERS. The fallout, as I have observed as a result of my involvement in MERS assignment cases in which the mortgagee is now defunct, has caused subject properties to remain unoccupied in a state of blighted deterioration or occupied by the recipient of a windfall, and, in either case, these properties remain in title limbo.

I should reconsider my Decision in this case is only buttressed by these policy considerations.

**Judgment**

In its amended complaint, FNMA asks the Court to (1) declare that it is the true mortgagee of record and has standing to enforce the Haines note through foreclosure of the mortgage, and (2) to order that any interest in the mortgage held by First Magnus Financial Corporation be assigned to it. The Court Grants the relief requested.

The Entry Is:

The Court's Decision dated 1/24/18 is Vacated. The Court Orders:

1. That the Plaintiff is the owner of all rights in this note and mortgage dated October 27, 2005, Jay Haines borrower and mortgagor, pertaining to the premises at 133 Kenduskeag Avenue in Bangor, Maine; the Plaintiff is the mortgagee of this mortgage within the meaning of 14 M.R.S. § 6321, and the Plaintiff has standing to enforce the note through foreclosure of the mortgage for any breach of the obligations under the note.

2. That any interest that First Magnus Financial Corporation has in the mortgage it granted to Jay R. Haines on October 27, 2005, pertaining to the premises at 133 Kenduskeag Avenue in Bangor, Maine, be assigned to the Federal National Mortgage Association.

Dated: September 25, 2018

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 10/4/18

6